SAW

07-4063

REECE C. WHITING, JR
REG#12607-198
P.O.BOX 1033
USP-1
COLEMAN, FLORIDA 33521-1033

November 12, 2010

CLERK
UNITED STATES COURT OF
        APPEALS
    4TH. CIRCUIT
LEWIS F. POWELL, JR
U.S. COURTHOUSE ANN
1100 E. MAIN STREET
    SUITE #501
RICHMOND, VIRGINIA 23219-3517


                    DEAR CLERK,

                        ENCLOSED IS A MOTION FOR LEAVE
TO FILE A SUPPLEMENTAL BRIEF; NOTE, THE BRIEF AND A LETTER FROM
MY ATTORNEY SUPPORTING MY EFFORTS TO SUBMIT THE SUPPLEMENTAL
BRIEF.



                        REECE C. WHITING, JR
                        PRO SE.

RECEIVED
2010 NOV 24 AM 9: 45
U.S. COURT OF APPEALS
FOURTH CIRCUIT

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

REECE COLEMAN WHITING, JR.,
          Petitioner,

v.                                    Appeal No. 07-4063

UNITED STATES OF AMERICA,
          Respondent.

---

MOTION FOR LEAVE TO FILE SUPPLEMENT BRIEF

---

COMES NOW, Reece Whiting, Jr., ("Petitioner") in the above-styled cause,
respectfully moving this Honorable Court for leave to file a supplement to his
initial brief, pursuant to Fourth Circuit Local Rule 10(e) and Federal Rules of
Civil Procedure, Rule 15(d). Petitioner moves this Honorable Court to allow him
to supplement his pleadings with the following issues:

I. The Government Attorneys knowingly used false testimony to obtain a tainted
indictment and conviction, all in violation of Petitioner's Fifth Amendment rights
under the Due Process Clause.

II. Petitioner's Due Process rights were violated when the Government sought
an enhanced sentence, pursuant to 21 U.S.C. § 851, for a conviction that occured
in Mexico, and the conviction was labeled a Crime Against Health (Contra Salud).
Because the Judicial Code in Mexico is based on Code Napoleon (Code Civil), and
the Government mislabled this conviction as a "Felony" conviction to support the
§ 851 enhancement, Petitioner received an improper enhancement of his sentence.
    The conviction in Mexico was also tainted because the Mexican authorities
violated the Consular Notice provisions of the Vienna Convention Treaty of 1963,
by failing to contact the American Consular once the Petitioner requested the
American Consular be contacted in his behalf. The Department of Justice through
the United States Attorney's Office has the authority, pursuant to Article VI,
Clause 2, of the Supremacy Clause, to correct this injustice. And to use such a
conviction to enhance Petitioner's sentence, violates the Fifth Amendment Due
Process Clause.

III. The Fifth Amendment Double Jeopardy Clause bars subsequent prosecutions,
and in the instant case, the prosecution utilized past conduct and evidence of
a 1994 offense in the instant case, to which Petitioner had already been found guilty
and sentenced, to taint the jury in the instant case.

1

IV. The Statute of Limitations barred prosecuting Petitioner for the conspiracy alleged in this indictment. The Government alleged the conspiracy began in 1997 and ended in 2004. Because the indictment was two-years outside the statute of limitations period, pursuant to 18 U.S.C. § 3282, it barred the Government from indicting Petitioner under the time frames alleged.

Petitioner seeks to amend his original pleadings because Petitioner's counsel, and co-defendants' co-counsels, have not addressed the four constitutional issues listed above adequately.

CONCLUSION

WHEREFORE AND IN CONCLUSION, Reece Coleman Whiting, Jr., prays this Honorable Court will grant him leave to amend his pleadings with the attached brief in the interest of justice.

Dated: November 12 , 2010.

Respectfully submitted,

Reece Coleman Whiting, Jr.

2

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

REECE COLEMAN WHITING, JR.,
                Petitioner,

v.                                    Appellate Case No. 07-4063

                                      Dist. Ct. No. RWT-04-0235

UNITED STATES OF AMERICA,
                Respondent.

---

### PRO SE SUPPLEMENT BRIEF

---

APPEARANCES:

Bonnie S. Greenberg
Assistant United States Attorney
36 S. Charles Street
Fourth Floor
Baltimore, Maryland 21201

Deborah A. Johnston
Assistant United States Attorney
6500 Cherrywood Lane
Suite #400
Greenfelt, Maryland 20770

Marc G. Hall, Esq.
Defense Counsel
200-A-Monroe Street
Suite #310
Rockville, Maryland 20850

Reece Coleman Whiting, Jr.
Reg. No. 12607-198
Petitioner/Defendant
Dorm # M-110
Federal Correctional Complex
USP 1
P.O. Box 1033
Coleman, Florida 33521-1033

TABLE OF CONTENTS

|                                                  | PAGE |
|--------------------------------------------------|------|
| Table of Contents                                | i    |
| Table of Authorities                             | ii   |
| Constitutional Provisions                        | ii   |
| Statutory Provisions                             | ii   |
| Other Authorities and Documentation              | ii   |
| Introduction                                     | 1    |
| Statement of the Facts and History of the Case   | 2    |
| Assignment of Supplement<br>   Issue One | 2 |
| Assignment Supplement<br>   Issue Two | 4 |
| Assignment Supplement<br>   Issue Three | 5 |
| Assignment Supplement<br>   Issue Four | 6 |
| Conclusion                                       | 8    |
| Certificate of Service                           | 10   |

i

TABLE OF AUTHORITIES

PAGE

Grady v. Corbin, 495 U.S. 508 (1990)                                    5

Iannelli v. United States, 420 U.S. 770 (1975)                          7

Medellin v. Texas, 128 S.Ct. 1346, 2008 U.S. Lexis 2912                 5
          (U.S. 2008)

Miles v. United States, 483 A.2d 649 (D.C. 1974)                        3

Mooney v. Holohan, 294 U.S. 103 (1935)                                  3

United States v. Bell, 954 F.2d 232 (4th Cir. 1992)                     7

United States v. Calandra,  414 U.S. 338 (1974)                         3

United States v. Clark, 928 F.2d 639 (4th Cir. 1994)                    6

United States v. Escobar, 674 F.2d 469 (5th Cir. 1982)                  6

United States v. Gallup, 812 F.2d 1271 (10th Cir. 1987)                 8

United States v. Ramirez, 324 F.3d 1225 (11th Cir. 2003)                8

United States v. Ross, 77 F.3d 1525 (7th Cir. 1996)                     7

United States v. Shabani, 313 U.S. 10 (1994)                            7

CONSTITUTIONAL PROVISIONS

Fifth Amendment of the United States Constitution                       5

Article VI, Clause 2, Supremacy Clause                                  5

STATUTORY PROVISIONS

18 U.S.C. § 3282                                                        1

21 U.S.C. § 846                                                        6

21 U.S.C. § 851                                                        4

Federal Rules of Criminal Procedure, Rule 12(b)(3) and (e)             7

Federal Rules of Evidence, Rule 404(b)                                 5

OTHER AUTHORITIES AND DOCUMENTATION

Article #36 of the Vienna Convention (1963)                            4

Trial Transcripts                                                      11

INTRODUCTION

Petitioner, proceeding **pro se**, adopts all issues in their entirety raised by his counsel on record, Marc G. Hall, and those of his co-defendants through co-counsels. However, there are four (4) questions of law that Petitioner believes are meritorious and pertinent to his case that were not presented in Appellate Counsel's Brief, and Petitioner moves this Honorable Court for leave to supplement these issues with Appellate Counsel's Brief, namely:

(1) Did Petitioner's Due Process rights and his right to a fair trial get violated when the Government allowed a convicted perjurer testify falsely before the grand jury and at trial?

(2) Did the Government violate the notice provision of 21 U.S.C. § 851, by using a non-felony conviction in support of its motion to enhance Petitioner's sentence?

(3) Did the Government violate Petitioner's Due Process Clause rights and right to a fair trial, by improperly utilizing 404(b) evidence to establish its case against Petitioner, and improperly using the essential elements of a 1994 smuggling conviction that was not a part of this case?

(4) Did the Government violate Petitioner's Due Process rights by going outside the statute of limitations period of this conspiracy in lieu of 18 U.S.C. § 3282, that holds there is a five year statute of limitation period for all offenses, except for capital offenses, and in the instant case the indictment alleged the conspiracy started in 1997, requiring the Government to bring the indictment by 2002?

1

STATEMENT OF THE FACTS AND HISTORY OF THE CASE

A statement of the facts and history of the case is contained within the appeal brief filed by counsel.

SUPPLEMENT ISSUE ONE

The prosecutor may not knowingly present false testmony and has a duty to correct testimony that he or she knows to be false. See **Mooney v. Holohan, 294 U.S. 103, 112 (1935); Napue v. Illinois, 360 U.S. 264, 269 (1959).** If the prosecutor fails to adhere to these Supreme Court cases, then he or she violates a defendant's due process rights.

In the case **sub judice**, the Government violated Petitioner's due process rights by allowing false testimony to be submitted to the grand jury and to the petit jury. The Government's chief witness against Petitioner, Emilio Escharte, had also committed perjury in another case and had been found guilty of perjury, and the grand jury in Petitioner's case was never given notice that Escharte was a convicted perjurer. (See Attachment, Trial Transcripts).

Petitioner posits that the Government should have made the grand jury aware of Escharte's prior perjury conviction so the grand jury could have weighed in this factor before handing up Petitioner's Indictment. Factors as to a witness's credibility are factors the grand jury should have been privy to in determining whether or not to indict Petitioner.

"For centuries the grand jury's responsibilities have included 'both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against

2

unfounded criminal prosecutions.'" **Miles v. United States, 483 A.2d 649, 653 (D.C. 1984)** (quoting **United States v. Calanana, 414 U.S. 338, 343 (1974)**).

Echarte impeaches himself before the Grand Jury, in regards to testimony, that was acknowleged as impeachment testimony by Assistant United States Attorney Bonnie S. Greenberg in the court below, before the Honorable District Court Judge Roger W. Titus. (See attached transcripts).

Echarte's testimony was shown to be inconsistent with his Grand Jury testimony, under cross examinations by attorneys Mr. Hall, Mr. Martin and Mr. Montemarano, et al, while Mr. Echarte was on the witness stand. It seems disingenous that the government's attorney did not know of Mr. Echarte's perjurous history; or did know, and used his testimony nevertheless to obtain a tainted guilty verdict. "Deliberated deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice". **Mooney v. Holohan**, 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791, 794, 98 ALR 406 (1935).

I.  Echarte did not state before the Grand Jury that he he was dealing drugs with M . Kimberly Rice. AUSA Greeberg approached the bench below and acknowledge Echarte had impeached himself before the Grand Jury. The Court responded, "you mean he lied." AUSA Greenberg said, "yes" (See attached transcript).

II. Before the Grand Jury, Echarte said he counted; $450,000 for Ms. Martin (the principal defendant. On the stand Mr. Echarte stated "he did not remember how much money he counted; 'maybe it was $400,000 or 475,000 or more." (See attached transcripts).

3

III. Mr. Echarte never testified before the Grand Jury, that
the petitioner drove him anywhere. On the stand, under ques-
tioning by AUSA Greenberg, he stated, "the petitioner
had driven him to Virginia to pick up multiple kilos
of drugs (heroin and cocaine)." Before the Grand Jury
he stated, "he did not trust the petitioner because he
used drugs."

SUPPLEMENTAL ISSUE TWO

THE GOVERNMENT'S ATTORNEYS VIOLATED THE PETITIONER DUE PROCESS
RIGHTS, WHEN THE GOVERNMENT USED A "MEXICAN" CONVICTION, AS A
FELONY FOR PURPOSES OF ENHANCEMENT UNDER 21 U.S.C. SECTION 851.

At the trial of the petitioner, the government's attorneys gave
notice that one of the prior convictions used for purposes of
enhancement, would be the 1984 conviction that occurred in Mexico
City in the Repulbic of Mexico.  That conviction on its face, and
in fact violated the Constitution of the United States because it
was not obtained after: (1) the issuance of an indictment; (2)
the condcution of a jury trial; and without due process of law.

The offense  the petitioner was convicted of was under CODE
NAPOLEON (Code Civil), the judicial code of the Republic of Mexico.
This is not an  Anglo-American law country.   The simple possession
of cocaine the petitioner was convicted of, was labelled "contra
salud" (against health).

The mexican conviction was further tainted, according to the
United States of America Standards, by the Mexican authorities
violation of the Consular Notice provision of the Vienna Convention
Treaty of 1963 (See attached a copy of Article #36 Vienna Convention)

4

in not contacting the american consular upon arrest, when petitioner
requested to see the American Consular

In the 2008 Supreme Court decision in **Medellin v. Texas**, 128 S.
Ct. 1346, 170 L. Ed. 2d 198, 2008 U.S. Lexis 2912 (U.S. 2008): "(Six
to Three vote), the Court questioned; violation of the Vienna Convention
was or was not harmless" Article VI, Cl.2 of the Supremacy Clause
establishes Treaties as recognized parts of the law of the land
of the United States.

It's clear, in the two issues  raised above that the petitioner
due process was violated; and the enhancement should not be allowed,
using the Mexican offense.

SUPPLEMENTAL ISSUE THREE

In **Grady v. Corbin**, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed 2d
548 (1990), the Supreme Court states: "The double jeopardy clause
of the Federal Constitution's Fifth Amendment bars subsequent
prosecution if, to establish an essential element of an offense,
charged  in that prosecution, the prosecutor will prove conduct that
constitutes an  offense for which the defendant has already been
prosecuted."

In the case below, the only essential  evidence presented to
the Grand Jury was the impeached testimony of Emilio Echarte, a
serial perjurer (i.e., in a 1968 U.S. Citizenship claim before a
U.S. District Court Judge; before the Grand Jury and the witness
stand in the case below), and the improper use of the 404(b) evidence.
The government improperly present evidence of the petitioner's 1994
Smuggling conviction as though, it was intrisic of the 2004 case,
as opposite to being extrisic.  This was highly prejudicial rather

5

than probative.

The government brought the Chief drug analyst from the San Francisco DEA's office with the drug analysis report from the 1994 case, along with photographs of the heroine smuggled from Thailand through Tokyo into San Francisco International Airport. They also had the case agent from the 1994 case to testify about the breath of the smuggling organization. The petitioner was cross examined by the prosecutor about the 1994 case, fully, ninety percent of the questioning. This presentation was highly prejudicial. In United States v. Escobar, (1982, CA5) 674 F. 2d 469, 10 Fed. Rules Evid Serr 449, it's stated, "Evidence testimony from prior record of the defendant describing him as a suspected narcotics smuggler would be prejudicial since such testimony would no doubt lead a jury to believe that current charges against the defendant were merely the most recent in series of drug related offenses."

When the appellate court reviews the trial transcripts, they surely will be able to see the injustice contrived by the prosecutors and the insufficency of the evidence from this offense.

### Supplemental Issue Four

To understand the nature of the statute of limitation bar, the petitioners must elucidate about 21 U.S.C. §846 Conspiracy. §21 USC 846 consist of the following elements: 1. An agreement between two or more persons; 2. The accused, willfully joined the conspiracy; 3. With the intent to accomplish the criminal purpose of the conspiracy. United States v. Clark, 928 F. 2d 639, 641-642 (CA4 1991);

United States v. Bell, 954 F. 2d 232, 237-38 (CA4 1992).  Further-
more, in United States v. Shabani, 513 U.S. 10 Ct. 16 (1994), the
United States Supreme court has instructed that when it comes to
an §846 offense, "the criminal agreement, itself is the Actus Reus.
"Conspiracy is an inchoate offense, the essence of which is an agree-
ment to commit an unlawful act." Iannelli v. United States, 420 US
770, 777, 432 Ed. 2d 616, 95 S. Ct. 1284 (1975).

    The petitioner notes the Mens Reus (the guilty mind) and the
Actus Reus (the guilty act) being complete, when the government says
the alleged conspiracy begins. All named, conspirators, inclusive of
the petitioner were liable for arrest in 1997; The start of the §846
conspiracy; and thus, begins the statute of limitation clock, in
which, the government had a five year period to indict.  The govern-
ments indictment was obtained May 5, 2004; two years beyond the five
year bar.

    One other issue in this statute of limitations bar must be
adressed;  Review of an unraised statute of limitations objection.
"Experation of the statute of limitations is an affirmative defense
not a bar to jurisdiction;  so, the petitioner's failure to raise
the issue before trial (below) means that he is at best entitled
only to a plain-error review.  See, e.g. United States v. Ross, 77
F. 3d 1525, 1537 (C.A. 7 1996).  Moreover, petitioner says, "At
best" there is an argumnet, that under Fed. R. Crim. P. 12(b)(3)
that petitioner has waived but not forfeited his statute of limita-
tions defense.  Rule 12(b)(3) specifies motions that must be made
before trial: The rule includes motions "alleging a defect in

7

instituting the prosecution" or "a defect in the indictment or information." Rule 12(e) provides that matters covered by Rule (b)(3) that are not raised by the pretrial motion deadline set by the court are waived, subject to the district court's authority to grant relief from the waiver rule of (e) to statute of limitations arguments. United States v. Ramirez, 324 F. 3d 1225, 1228-29 (CA 11 2003); United States v. Gallup, 812 F. 2d 1271, 1280 (Ca10 1987). In the Seventh Circuit, statute of limitations arguments not timely raised in the district court are considered forfeited, not waived, and are accorded plain-error review. United States v. Ross, Supra. The holding in Ross is premised upon certain language in advisory committee notes to Rule (b) suggesting that a statute of limitations defense is among those matters that may, not must, be raised by pretrial motion. Id. The petitioners cited Ross for the proposition that his statute of limitations argument should be considered.

### CONCLUSION

WHEREFORE, for the reasons set forth in this supplemental brief, the petitionere move the court to reverse judgment in the case below.


Respectfully submitted.


Reece Coleman Whiting, Jr.
Reg. No. 12607-198
Federal Correctional Complex USP1
P.O. Box 1033
Coleman, FL 33521-1033

8

# *Certificate of Service*

I, <u>REECE COLEMAN WHITING,JR</u>, hereby certify under the penalty

of perjury (Title 28, U.S.C., Section 1746) that I have served a true and

correct copy of the following document(s):
I.COVER LETTER
II.MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF.
III. SUPPLEMENTAL BRIEF.

which, pursuant to <u>Houston v. Lack</u>, 487 U.S. 266, 101 L.Ed.2d 245, 108 S.Ct.

2379 (1988), is deemed filed at the time that it was delivered to prison

authorities for forwarding to the court and service upon parties to litigation

and/or their attorney(s) of record.

I placed the above-referenced material in a sealed envelope with first-

class postage affixed, addressed it to:

DEFENSE COUNSEL
MARC G. HALL
ATTORNEY-AT-LAW
HALL&CHO,P.C.
200-A-MONROE STREET
SUITE#310
ROCKVILLE,MARYLAND 20850

ASSISTANT UNITED
STATES ATTORNEY
DEBORAH A. JOHNSTON
OFFICE OF THE U.S.
ATTORNEY
6500 CHERRYWOOD LANE
SUITE#400
GREENBELT,MARYLAND 20770

BONNIE S.GREENBREG
OFFICE OF THE
U.S.ATTORNEY
36 S.CHARLES STREET
FOURTH FLOOR
BALTIMORE,MARYLAND
21201

and deposited the envelope in the legal mailbox at FCC Coleman/USP-1 for

collection and mailing via the U.S. Postal Service on this ___12TH___ day of

___November___, 2010.

REECE COLEMAN WHITING,JR
Register No.12607-198
FCC Coleman/USP-1
P.O. Box 1033
Coleman, FL 33521-1033

10

ATTACHMENTS

# HALL&CHO P.C.

### ATTORNEYS AT LAW

**Marc G. Hall**
mghlaw@mac.com

**Jeannie E. Cho**
jcho@hallcho.com

July 1, 2010

Reece C. Whiting
Reg.# 12607-198
Post Office Box 1033
United States Penitentiary
Unit M110
USP #1
Coleman, FL 33521

Re: Appeal

Dear Mr. Whiting:

I can understand your frustration with the length of time this is taking. The most recent delay is due to the fact that another one of the appellate counsel has now decided to raise an issue regarding jury instructions. However, no one had previously ordered a transcript, therefore we now have to wait for the court reporter to transcribe them.

Rest assured that I have taken note of the case law you have either sent me or cited to me in your letters and will incorporate anything I believe may help. I also understand you desire to supplement the brief with your own work and I encourage you to do so.

Sincerely

Hall & Cho

Marc G. Hall

6. The sending State, its diplomatic missions and its consular posts may designate consular couriers ad hoc. In such cases the provisions of paragraph 5 of this article shall also apply except that the immunities therein mentioned shall cease to apply when such a courier has delivered to the consignee the consular bag in his charge.

7. A consular bag may be entrusted to the captain of a ship or of a commercial aircraft scheduled to land at an authorized port of entry. He shall be provided with an official document indicating the number of packages constituting the bag, but he shall not be considered to be a consular courier. By arrangement with the appropriate local authorities, the consular post may send one of its members to take possession of the bag directly and freely from the captain of the ship or of the aircraft.

### Article 36

### Communication and contact with nationals of the sending State

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

*(a)*    consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

*(b)*    if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph;

*(c)*    consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgement. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

2. The rights referred to in paragraph 1 of this article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this article are intended.

15

144

DIRECT - MR. ECHARTE BY MS. GREENBERG

1   foundation.  I don't remember him saying that Kimberly Rice

2   had denied this or that -- it's the inconsistent statement.

3   This is not a foundation for an inconsistent statement.  I

4   think that was Mr. Montemarano's objection.

5            MS. GREENBERG:  Your Honor, the --

6            THE COURT:  The objection is that he did tell

7   Kimberly Rice.

8            MS. GREENBERG:  Right.

9            THE COURT:  And you're telling me that he said the

10  opposite to the Grand Jury.

11           MS. GREENBERG:  Yes.

12           THE COURT:  Okay.

13           (Counsel returned to the trial tables and the

14  following ensued:)

15  BY MS. GREENBERG:

16  Q.   Sir, had I asked you about your dealings with Ms. Rice

17  on an earlier occasion?

18  A.   Yes, you did.

19  Q.   And did you talk to the Grand Jury about your dealings

20  with Ms. Rice while you're under oath?

21  A.   Yes, I did.

22  Q.   Did you lie to me and did you lie to the Grand Jury?

23  A.   Yes, I did.

24  Q.   What is the -- what is the truth about your drug

25  dealings with Kimberly Rice?

CROSS - MR. ECHARTE BY MR. HALL

1          Counsel, I told you I would take a look at this
2     issue that you've raised about impeachment of this witness
3     by convictions, which, if I heard correctly, these are
4     convictions from the mid '60s?
5          MS. GREENBERG:  It's 1967 and 1968 convictions,
6     Your Honor.
7          THE COURT:  Because I don't have the documents in
8     front of me.  You all are -- you all do, and I don't, so I'm
9     at somewhat of a disadvantage.
10         MR. HALL:  There's also, Your Honor, from I think
11    1969, there's what appears to be a conviction for false
12    claim of citizenship.
13         MS. GREENBERG:  That's what I had as 1968, Your
14    Honor.
15         THE COURT:  Now, as I understand it, the
16    Government has objected, complaining first that it has not
17    received the notification required by Rule 609(b) -- because
18    it's more than ten years old and because they haven't been
19    given sufficient written notice.  That's the Government's
20    position.  Am I correct?
21         MS. GREENBERG:  Yes, Your Honor, but, secondly,
22    that it -- the probative value --
23         THE COURT:  No, I understand, but I'm saying
24    you're throwing up procedurally the bar that it's not only
25    too old but, more importantly, they did not give you notice.

CROSS - MR. ECHARTE BY MR. HALL

1    you?

2    A.    I not seen it.  Can you ask your client if he met me

3    through that situation or not.

4    Q.    So the answer to my question is you did not see it, did

5    you?

6    A.    I not see it in there.  Maybe the question not being

7    asked to me.

8    Q.    Okay.

9    A.    How I agree with everything that's in the paper?  We

10    talking about drug in that paper.  We not talking about

11    something else.  Nothing but the drugs.

12    Q.    Okay.  So let me ask you this.  I want to ask you

13    about -- a couple more questions about your prior

14    convictions.

15         You were convicted -- well, let me ask you this.

16    Your involvement in heroin goes back to the 1960s, doesn't

17    it?

18    A.    Yes, I did.

19    Q.    And you have a conviction in 1967 for heroin, don't

20    you?

21    A.    Yes, I did.

22    Q.    Okay.  You also have a 1969 conviction for making a

23    false claim of citizenship, is that not correct?

24    A.    Absolutely.

25    Q.    You did.  Okay.  That means you lied about being a U.S.