# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**Paulette Martin**
**Appellant**

**Appellant Case #07-4060**

v.

**District Court #RWT-04-0235**

**United States of America**
**Appellee**

## PRO SE SUPPLEMENTAL BRIEF

Appearances:

Bonnie S. Greenberg
Assistant United States Attorney
36 S. Charles Street
Fourth Floor
Baltimore, Maryland 21201

Deborah A. Johnston
Assistant United States Attorney
6500 Cherrywood Lane
Suite 400
Greenbelt, Maryland 20770

Michael D. Montemarano P.A.
5695 Main Street
Suite #201
Elkridge, Maryland #21075-5016

Paulette Martin
Reg#38350-037
Appellant/Defendant
S.F.F. Hazelton
Bruceton Mills, WV. 26525

# TABLE OF CONTENTS

| | |
|---|---|
| Table of Contents | I. |
| Table of Authorities | II. |
| Constitutional Provisions | II. |
| Statutory Provisions | II. |
| Other Authorities and Documentation | II. |
| Introduction | 1. |
| Statement of the Facts and History of the Case | 2. |
| Supplemental Issue One | 2. |
| Supplemental Issue Two | 4. |
| Supplemental Issue Three | 6. |
| Conclusion | 8. |
| Certificate of Service | 9. |

# TABLE OF AUTHORITIES CASES

1. <u>Daubert v Merrell Dow Pharms, Inc.</u> 509 U.S. 579, U.S. S. Ct. 2786 (1993)    Pg. 7
2. <u>Demps v. Wainwright</u> (1982 CA S Fla) 666 F.2d 224, Cent ten (1982) 459 U.S. 844, 74 L. Ed 2D 89, 103 S.Ct. 98    Pg. 4
3. <u>Giglo v. United States,</u> 405 U.S. 150, 154-55(1972)    Pg. 3
4. <u>Maryland v. Craig</u> (1990) 497 U.S. 836, 111 L. ED. 2D 666, 110 S. Ct. 3157, 30 Fed Rules Evid. Serv. 1.    Pg. 5
5. <u>McCreary County Ky. v American Civil Liberty Union of Ky.,</u> 125 S. Ct. 2722, 162 L.ED F29 (2005)    Pg.6
6. <u>Pennsylvania v. Ritchie,</u> (1987) 480 U.S. 39, 94 L. Ed. 2D 40, 107 S. Ct. 989, 22 Fed Rules Evid. Serv. 1.    Pg. 4
7. <u>United States v. Schlesingger,</u> 438 F. Supp 2d f6 (E.D.N.Y.2006)    Pg. 2
8. <u>United States v. Wallach,</u> 935 F.2D 445,456 (2nd Cir 1991)    Pg. 3

## CONSTITUTIONAL PROVISIONS

1. First Amendment    Pgs. 6, 8
2. Fifth Amendment    Pgs. 1,2,3,8
3. Sixth Amendment    Pgs. 1,5,8

## STATUTORY PROVISIONS

1. Federal Rule of Criminal Procedure 6(e) (3)(c)(i)    Pg. 2

## OTHER AUTHORITIES AND DOCUMENTS

1. Case # RWT 00235    Pg.4

# INTRODUCTION

Appellant processing Pro Se, adopts all issues, in their entirety, raised by her counsel, Michael D. Montemarano, and those of her co-defendants and their counsels. However, there are three (3) questions of law that Appellant believes are meritorious and pertinent to her case that were not adequately presented in Appellate counsel's brief. The Appellate moves this Honorable Court for leave to supplement these issues with Appellate counsel's brief; namely:

1. Did the government attorneys knowingly used false testimony to obtain a tainted indictment and conviction, in violation of Appellant's Fifth Amendment rights under the due process clause?

2. Did the government attorneys violate the rights of the Appellant to physically face those who have given evidence against her; and the right to conduct cross examination, in violation of the Sixth Amendment of the Constitution?

3. Did the government attorneys use testimony of questionable credentialed expert witness testimony, and thus, denied the Appellant's due process rights, pursuant to the Fifth Amendment of the Constitution?

## STATEMENT OF THE FACTS AND HISTORY OF THE CASE

A statement of the facts and history of the case is contained within the appeal brief filed by the counsel.

## SUPPLEMENTAL ISSUE ONE

The Appellant maintains that the indictment process before the Grand Jury was in violation of the Fifth Amendment's due process clause, which, "prohibits the government from unfairly or arbitrarily depriving a person of life, liberty or property." The government used perjured testimony to obtain an indictment against the Appellant. The main witness to testify before the Grand Jury of any drug transaction was a known perjurer: Emilio Echarte, Mr. Echarte is a serial perjurer. This government witness admitted he committed perjury before the Grand Jury in criminal case #RWT- 0235. He, (Echarte) had claimed under oath, before a United States District Court judge, in 1968, to be an American citizen; and the government knew or should have known the perjured history of their witness.

It is stated in <u>United States v. Schlesingger,</u> 438 F. Supp 2d f6 (E.D.N.Y.2006), "The knowing introduction of false testimony by the government will lead to virtually automatic reversal of a conviction." It is the Appellant's belief, that no notice of Echarte's past perjury was revealed to the Grand Jury; so that they (the Grand Jurors) could weigh, what credibility they might give to Echarte's testimony. Federal Rule of Criminal Procedure 6(e) (3)(c)(i) provides for disclosure of Grand Jury transcripts; and the Appellant believes these transcripts will reveal prosecutorial misconduct.

2

To compound, Echarte's past perjury, he lied before the Grand Jury, when he elected, not to reveal his drug transactions with my daughter, Kimberly Rice; a co-defendant. In the <u>United States v. Wallach</u>, 935 F.2D 445,456 (2nd Cir 1991), it is stated, "where the prosecution knew or should have known of the perjury, the conviction must be set aside, if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Echarte testified before the Grand Jury that he had counted $450,000 for me to take to my drug connection. On the witness stand under the cross examination of attorney Marc G. Hall and Michael Montemarano, Echarte stated that he didn't remember, if he counted $400,000 or $470,000; or whether I had counted part of the money. It seems it is without question that Echarte's eyewitness counting testimony had to have had an adverse affect upon the jurors, which led to a guilty verdict.

Appellant maintains that she should not have been indicted on Echarte's testimony because the government violated, <u>Giglo v. United States,</u> 405 U.S. 150, 154-55(1972), and its requirement that the government furnish defendant with evidence affecting the credibility of government witnesses; i.e. the 1968 Florida District Court perjury.

The Appellant further states, Echarte should not have been allowed to testify, in light of his perjury proclivities. The Appellant believes she is entitled to have her conviction overturned, as a result of the blatant untruthfulness of Emilio Echarte; which violated her right to fair trial under the due process clause of the Fifth Amendment.

## SUPPLEMENTAL ISSUE TWO

"Confrontation clause provides two (2) types of protections for criminal defendant- right physically to face those who testify against him and right to conduct cross-examination."

3

<u>Pennsylvania v. Ritchie</u>, (1987) 480 U.S. 39, 94 L. Ed. 2D 40, 107 S. Ct. 989, 22 Fed Rules Evid Serv. 1.

In count one of the indictment brought against the Appellant, it was stated that the Appellant had, "one kilogram or more of a mixture of substance containing a detectable amount of heroin, a schedule I controlled substance."

<u>No</u> evidence, **NO** testimony was presented at trial linking the Appellant or anyone else at this trial (RWT 00235) to heroin; of the amounts (one kilogram or more) stated in the indictment. The perjurer, Echarte talked about giving a small amount of heroin to co-defendant, Reece Whiting; but, any testimony from Echarte is <u>impeached</u>. How, then, did the government sustain or present an argument, evidence, or testimony about a kilogram of heroin? <u>Gwendolyn Levi!</u> The government brought Moises De Los Reyes Viraite Lorente to the stand to testify about heroin sale he made to Gwendolyn Levi; a cooperating government witness, who provided evidence of the Appellant's heroin involvement. Or at least, that is what the Appellant believes, but cannot know, because, Gwendolyn Levi refused to testify in an earlier trial connected to this case, and was not questioned by the government in this case; except, through the testimony of Mr. Vriarte Lorente, who did not know **any** of the co-defendants on trial in this case. His testimony was about his heroin business dealings with Ms. Levi and her Para amour, Dog Turner. <u>Demps v. Wainwright</u> (1982 CA S Fla) 666 F.2d 224, Cent ten (1982) 459 U.S. 844, 74 L. Ed 2D 89, 103 S.Ct. 98 states, "violation of confrontation clause can be harmless error; question of whether or not constitutional error was harmless cannot be answered by considerable error in isolation, and it is necessary to review fact of case and evidence adduced at time to determine effect of unlawfully admitted evidence upon other evidence adduced at trial and upon conduct of defense; court must then decide whether, absent so determined unconstitutional effect

4

evidence remains not only sufficient to support verdict but so overwhelming as to establish guilt of accused beyond reasonable doubt."

If the government does not produce any connective evidence of the Appellant's involvement with the heroin; but present testimony from the heroin connection to a witness **never** presented in court for direct or cross-examination, then the court can't rule on the guaranty of the Sixth Amendment confrontation rights due the Appellant; nor can the jury reasonably draw any inference, but, that Uriarte Lorente sold heroin to Gwendolyn Levi and William "Dog" Turner, and somehow these non-testifying, not present witnesses incriminate those defendants at the defense table. "Central concern of Confrontation clause is to ensure reliability of evidence against criminal defendant by subjecting it to rigorous testing in context of adversary proceeding before trier of fact." Maryland v. Craig (1990) 497 U.S. 836, 111 L. ED. 2D 666, 110 S. Ct. 3157, 30 Fed Rules Evid Serv. 1. The Appellant asks the court to reverse her conviction on the grounds that testimony from a non-testifying witness, who incriminated the Appellant before the Grand Jury, but did not present herself to be confronted at the trial below; thus violates her Sixth Amendment right to confront her accuser.

## SUPPLEMENTAL ISSUE THREE

Central to the government case, investigatory and evidentially was the input and testimony of Sergeant Christopher Sakala, case agent, from the Poiner Georges County Police department. Sergeant Sakala had a statement, which he punctuated most of his testimony, opinion_____ "he was sure of his opinion or statement to a moral certainty." He repeated that mantra over and over again. Several of the defense attorneys called him to task over the use of this statement, when they questioned him. It became obvious that the government was using

5

the credibility of Sakala to rebut any doubts raised by the defense. The Appellant believes that Sakala's use of the words, "moral certainty", connotes religion; **GOD**, or his having a mandate from some higher power, that makes his opinion or statements more credible then anyone else; that his words should be received as more holy!!

The First Amendment of the Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the Freedom of Speech, of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievance." Sakala had the temerity to importune himself as having some divine calling, with his statement of "moral certainty"; and did so, at the urgings of A.U.S.A's Deborah A. Johnston and Bonnie S. Greenberg. The Court, in the person of the Honorable Judge Roger W. Titus did nothing to reprimand or stop this abuse of the separation of church and state: in <u>McCreary County Ky. v American Civil Liberty Union of Ky.</u>, 125 S. Ct. 2722, 162 L.ED f29 (2005) it is stated, "under lemon, government action must have a secular purpose, and, although a legislature's stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not secondary to a religious objective." It is clear, in Sakala's use of a "moral certainty", in describing his opinion that the government (Deborah A. Johnston and Bonnie S. Greenberg), neither had a secular purpose or neutral purpose in allowing this characterization of Sergeant Sakala's testimony: Their (the A.U.S.A.'s) purpose seems to be purely religious, for the stated purpose of prejudice for the government (appealing to the religious bias of the jurors) and prejudice against the defendants; by implication, that he (Sergeant Sakala) is good and the defendants are not good, in the eyes of God and his anointed one (Sergeant Sakala). The jury verdict on little evidence and perjured evidence seems to support the above argument.

6

But more importantly, the government held Sergeant Sakala out to be an expert witness; and the Court admitted him to function in this capacity although he met none of the Daubert Test Standards, established by the Supreme Court. <u>Daubert v Merrell Dow Pharms, Inc.</u> 509 U.S. 579, <u>Daubert v Merrell Dow Pharms, Inc.</u> 509 U.S. 579, established that the expert testimony consist of scientific, technical or other specialized knowledge that will assist the fact finder in understanding the evidence. As was stated above, Sergeant Sakala's expert testimony was based on his "moral certainty"; not science.

The Daubert Test Requires:

1. Whether the theory can be or has been tested.
2. Whether the theory has been subjected to peer review or publication.
3. The theory's known or potential rate of error.
4. Whether these are standards that control its operation.
5. The degree to which the relevant scientific community has accepted the theory.

Sakala's Daubert test one is invalidated because Sakala's opinion is not based on science, but religion:

Daubert test two is invalidated because Sakala has published nothing, nor was any peer testimony presented to validate Sakala's theory:

Daubert test three is invalidated because error cannot be quantified when ones starting point is "moral certainty", which is based on religion, and operated from a starting point of **FAITH**:

Daubert test five is invalidated because no scientific community known, under any system has religion as its starting point; unless one wants to place intelligent design in some scientific category.

7

The Appellant's First Amendment, Fifth Amendment, and Sixth Amendment rights were violated by the government, and the conviction should be reversed.

## CONCLUSION

Wherefore, for the reasons set forth in this supplemental brief, the Appellant urges the Court to reverse judgment in the case below.

Respectfully Submitted,

*Paulette Martin*

Paulette Martin
Reg# 38350-037
P.O. Box 3000
S.F.F. Hazelton
Bruceton Mills, WV. 26525

## CERTIFICATE OF SERVICE

I, Paulette Martin, hereby certify under the penalty of perjury, that I have served a true and correct copy of the documents submitted, to:

**Defense Counsel**
Michael D. Monteuarano, P.A.
5695 Main Street
Suite#201
Elkridge, Maryland 21075-5016

**Assistant United States Attorneys**
Deborah A. Johnston
A.U.S.A.
6500 Cherrywood Lane
Suite# 400
Greenbelt, Maryland 20770

8

Bonnie S. Greenberg
A.U.S.A.
36 S. Charles St.
Fourth Floor
Baltimore, Maryland 21201

